UNITED STATES of America,
Plaintiff,

v.

Francis LA PLANT, Defendant.

UNITED STATES of America,
Plaintiff,

v.

Kelly LA PLANT, Defendant.

Cr. Nos. 8650, 8651.

United States District Court
D. Montana,
Great Falls Division.

Oct. 9, 1957.

Krest Cyr, U. S. Atty., Butte, Mont., for plaintiff.

John P. Moore, Cut Bank, Mont., for defendants.

JAMESON, District Judge.

Each defendant has moved to dismiss the information on three grounds: (1) the court is without jurisdiction for the reason that the offense charged is cognizable only by, and under, the exclusive jurisdiction of the Blackfeet Tribal Court of the Blackfeet Indian Reservation, (2) the information does not state sufficient facts, and (3) the defendant is placed in double jeopardy by reason of a conviction for the same offense in the Blackfeet Tribal Court.

Defendants, both members of the Blackfeet Indian Tribe, were charged with assault and battery in a criminal complaint before the Tribal Judge of the Blackfeet Tribal Court on May 12, 1957, the complaint stating that defendants with others had on the previous night run a car occupied by the two complainants off the road and "beat them up." A tribal warrant was issued and the defendant Francis LaPlant was taken into custody.

Sometime between May 12th and May 15th, a special agent of the Federal Bureau of Investigation told the tribal judge that the defendant would be prosecuted by the federal authorities. As a result, there was written on the bottom of the complaint, "Transferred to the Federal Court". On May 15, 1957, commissioner's complaints, authorized by the United States Attorney, were filed, charging both defendants with simple assault. Francis LaPlant, still under arrest on the tribal warrant, was taken into custody by federal officials and Kelly LaPlant was thereafter arrested under a federal warrant. Both were released on bond.

On June 28, 1957, the tribal judge was directed by the Tribal Council of the Blackfeet Indian Reservation to proceed with the disposition of the case in tribal court, and as a result the defendants appeared before the tribal judge on July 9, 1957, entered a plea of guilty to a charge of simple assault, and were each fined in the amount of $25, which was paid.

Thereafter, on September 6, 1957, informations were filed in this court, charging the defendants with assault on the reservation, which had been included in the commissioners' complaints. Arraignment was set for September 23, 1957, at which time the plaintiff appeared by Krest Cyr, Esquire, United States Attorney for the District of Montana, and the defendants personally and by their counsel John P. Moore, Esquire. The motions to dismiss were heard and testimony taken, including that of the defendants. There was no testimony or argument with reference to the sufficiency of the information.

Memoranda have been filed by the respective counsel. Counsel for the Gov-

ernment agrees that viewing the testimony in the light most favorable to the defendants, they have been placed in jeopardy by the proceedings before the tribal court and that the informations accordingly should be dismissed.

■ The motions to dismiss are granted, on the ground that defendants would be placed in double jeopardy by reason of conviction for the same offense in the Blackfeet Tribal Court.

While nothing further is required, I feel that by reason of questions raised at the hearing, additional comment should be made with respect to the first contention in defendants' motions and also with respect to the procedure followed in this case.

■■ As early as 1885, in exercise of its plenary powers, Congress decided to reduce the area of local self rule and traditional sovereignty of the various Indian tribes by providing for federal jurisdiction of certain crimes. This withdrawal of tribal jurisdiction from what are now 10 "major crimes" is found in Title 18 U.S.C.A. § 1153, providing that:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States * * *."

It is beyond question, however, that this left to tribal courts the jurisdiction of other crimes not specifically enumerated. United States v. Quiver, 1916, 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196; Iron Crow v. Ogallala Sioux Tribe, D.C.W.D. S.D. 1955, 129 F.Supp. 15, 20–21, affirmed 8 Cir., 231 F.2d 89; United States v. Jacobs, D.C.E.D.Wis. 1953, 113 F. Supp. 203. The Indian tribes still possess their inherent sovereignty and power of self government excepting only where it has been specifically taken away from them either by treaty or Congressional Act. Iron Crow v. Ogallala Sioux Tribe, 8 Cir., 1956, 231 F.2d 89, 94, 96. See U. S. v. Jacobs, supra, 113 F.Supp. at page 205; Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030; State v. McClure, 1954, 127 Mont. 534, 268 P.2d 629, 635.

The Blackfeet Tribe of the Blackfeet Indian Reservation of Montana adopted and the Secretary of Interior approved on December 13, 1935, a tribal constitution and by-laws under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Statutes at Large, page 986, and amendments thereto), 25 U.S. C.A. § 476. Article VI, Section 1(k), thereof gave power to the council of the Blackfeet Reservation:

"To promulgate ordinances for the purposes of safeguarding the peace and safety of residents of the Blackfeet Indian Reservation and to establish minor courts for the adjudication of claims or disputes arising amongst the members of the tribe, and for the trial and punishment of members of the tribe charged with the commission of offenses set forth in such ordinances."

Pursuant to the constitution and by-laws there was adopted by the tribe a law and order code which was approved by the Secretary of Interior. It is therein provided:

Chap. 1, Sec. 1. Jurisdiction.

"The Blackfeet Indian Court shall have jurisdiction over all offenses enumerated in Chapter 5, when committed by any Indian, as defined by this section, within the Blackfeet Indian Reservation.

"With respect to any of the offenses enumerated in Chapter 5 over which federal or state courts may have lawful jurisdiction, the jurisdiction of the Court shall be concurrent and not exclusive. It shall be the duty of the said Court to order delivery to the proper authorities of

the State or Federal Government or of any other tribe or reservation, for prosecution, any offender, there to be dealt with according to law or regulations authorized by law, where such authorities consent to exercise jurisdiction lawfully vested in them over the said offender * * *".

Code of Indian Tribal Offenses

Sec. 1. Assault

"Any Indian who shall attempt or threaten bodily harm to another person through unlawful force or violence shall be deemed guilty of assault, and upon conviction thereof shall be sentenced to labor for a period not to exceed five days, a $10.00 fine or both such fine and imprisonment, or shall be required to furnish a satisfactory bond to keep the peace."

Sec. 2. Assault and Battery

"Any Indian who shall willfully strike another person or otherwise inflict bodily injury, or who shall be offering violence cause another to harm himself shall be deemed guilty of assault and battery and upon conviction thereof shall be sentenced to labor for a period not to exceed ninety days or fine of $180.00 or both such fine and imprisonment."

Authority to maintain and regulate tribal courts was originally given the Commissioner of Indian Affairs in what is now Title 25 U.S.C.A. § 2. Iron Crow v. Ogallala Sioux Tribe, supra, United States v. Clapox, 9 Cir., 1883, 35 F. 575. Present regulations concerning law and order on Indian reservations were issued under the authority of that statute and are found in 25 C.F.R. Sections 161.1 et seq. It is there provided under Sec. 161.1:

(d) "The regulations in this part shall continue to apply to tribes organized under the act of June 18, 1934 (48 Stat. 984; 25 U.S.C. [§§] 461–479), until a law and order code has been adopted by the tribe in accordance with its constitution and by-laws and has become effective;
* * *

(e) "Nothing in this section shall prevent the adoption by the tribal council of ordinances applicable to the individual tribe, and after such ordinances have been approved by the Secretary of the Interior they shall be controlling, and the regulations of this part which may be inconsistent therewith shall no longer be applicable to that tribe."

■ The Blackfeet Tribe having organized under the Act of June 18, 1934, and properly adopted a law and order code pursuant to its constitution and by-laws, are therefore not bound by the regulations issued by the Commissioner. It is interesting to note, however, that the section of the law and order code of the tribe quoted above providing for concurrent jurisdiction of the tribal court and federal or state courts, and making it the duty of the tribal court to order delivery of any offender to proper state of federal authorities where such authorities consent to exercise jurisdiction over the offender, is an adaptation of Section 161.2(b) of the Commissioner's regulations.

If jurisdiction of crimes committed by Indians on the reservation (except those specifically enumerated in 18 U.S.C.A. § 1153) was ever considered to be exclusively in the tribal court, the above provision in Article I of the Blackfeet Law and Order Code effectively surrenders such jurisdiction to state or federal courts to the extent that "proper authorities" consent to exercise their existing jurisdiction over the offender. Does the United States have jurisdiction over the defendants for the offense committed here?

■ The informations were filed under the authority, as stated on their face, of Title 18 U.S.C.A. § 1152 and § 113(d). The pertinent Code provisions which vest the Federal government with jurisdiction in cases of this kind are as follows:

Title 18 U.S.C.A. § 113. "Assaults within maritime and territorial jurisdiction.

"Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: * * *

"(d) Assault by striking, beating, or wounding, by fine, of not more than $500 or imprisonment for not more than six months, or both."

Title 18 U.S.C.A. § 7 "Special maritime and territorial jurisdiction of the United States defined.

"The term 'special maritime and territorial jurisdiction of the United States', as used in this title, includes: * * *

"(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, * * *."

Title 18 U.S.C.A. § 1152, "Laws governing.

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country. * * *" Title 18 U.S.C.A. § 1151, "Indian country defined.

"Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, * * *."

There can be no question that the federal government generally has jurisdiction over the defendants for any assault committed by them on the reservation. See Guith v. United States, 9 Cir., 1956, 230 F.2d 481. Was this the proper occasion for its exercise?

■■ Title 18 U.S.C.A. § 1152, quoted above, which provides for the general laws of the United States to extend to the Indian country, contains the following qualification:

" * * * This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any cause where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

Does this bar prosecution of the defendants by reason of the fact that they have been punished by the local law of the tribe? In United States v. Sosseur, 7 Cir., 1950, 181 F.2d 873, 876, involving a prosecution for violation of state law under the Assimilative Crimes Act, the court had occasion to comment on the effect of this paragraph of Section 1152. The court said:

"As we construe the section, in the absence of a tribal law under which an alleged offender has actually been punished, or an express recognition of exclusive jurisdiction in the tribe by treaty stipulation, tribal members are subject to the general laws of the United States which by § 13, the Assimilative Crimes Act, are to be found not only in the federal code, but also in the statutes of the State within whose territorial limits the reservation is located, and made a part of the federal law for such reservation by assimilation."

But in this case the offenders actually have been punished under tribal law. This was done under the sovereignty remaining with the tribe, and pursuant to a regularly adopted and approved law and order code. This alone would appear

sufficient under the statute to warrant a dismissal of the informations, absent any question of double jeopardy. However, with respect to the latter it cannot be questioned that the judgment of a regularly established tribal court is valid for all purposes (United States v. Clapox, supra; Iron Crow v. Ogallala Sioux Tribe, supra), and jeopardy must be assumed to have attached to the defendants by the judgment therein.

The only question remaining for consideration is the effect of the notation on the criminal complaint before the tribal judge stating: "Transferred to the Federal Court". (This notation was subsequently crossed out, presumably at the time of trial in the tribal court.) This is a part of the broader question, which apparently caused no little confusion in the instant case, as to what constitutes consent on the part of the federal authorities to exercise jurisdiction over the offender. The Government contends that the filing of an authorized commissioner's complaint against persons charged in the tribal court, with the ensuing arrest on the federal warrant, was a sufficient signification of consent by authorities to advise the tribal court and members of the Tribal Council of an intent to prosecute. While this may be true, the fact remains that a judgment was entered and a fine paid on a proceeding which was still pending in that court. This alone would constitute "punishment by the local law of the tribe" under Section 1152, and as stated above warrant a dismissal of the informations charging the same crime.

I find no authority for the "transfer" of a case from the tribal to federal court. Without attempting to prescribe a proper procedure for all future cases where it is deemed advisable for federal authorities to assume jurisdiction of persons charged in a tribal court, it does appear that the difficulties here arising may be avoided by written notice to the tribal court that the Federal authorities consent to assume jurisdiction and by a dismissal of the complaint in tribal court prior to the institution of proceedings in this court.