**Alvin SETTLER, Appellant,**

v.

**YAKIMA TRIBAL COURT, Appellee.**

No. 22815.

United States Court of Appeals
Ninth Circuit.

Dec. 22, 1969.

Francis Conklin (argued), Spokane, Wash., for appellant.

James B. Hovis (argued), of Hovis, Cockrill & Roy, Yakima, Wash., for appellee.

Before BARNES, ELY and HUFSTEDLER, Circuit Judges.

BARNES, Circuit Judge:

Alvin Settler seeks review of a decision of the United States District Court for the Eastern District of Washington dismissing his petition for a writ of habeas corpus. Appellant based his petition on the authority conferred by 28 U.S.C. § 2241 (1964).[1] The jurisdiction of this court on appeal is grounded on 28 U.S.C. § 1294 (1964). Appellee's motion to dismiss this appeal has been quashed.[2]

This case involves the important question of whether, in a case arising before the effective date of the Indian Civil Rights Bill of 1968, 25 U.S.C.A. § 1301 *et seq.* (Supp.1969), a federal district court has jurisdiction to hear a petition for a writ of habeas corpus from one convicted by a Yakima Indian Tribal Court.

Appellant, an American Citizen and a member of the Confederated Tribes and Bands of the Yakima Indian Nation, was convicted on September 29, 1967 by the Yakima Tribal Court of twice violating off-reservation Indian Tribal Fishing

---

1. Section 2241(c), the subsection in question here, reads as follows:

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

"(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

"(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

"(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

"(5) It is necessary to bring him into court to testify or for trial."

2. Appellee moved to dismiss this appeal on the grounds that petitioner failed to (1) file a supersedeas bond, (2) file a full transcript of proceedings or statement of issues, and (3) docket the appeal within 40 days from the filing of the notice of appeal. Each of the aforementioned rule discrepancies, however, can be traced directly to appellant's financial problems rather than to procrastination, and there has been no demonstration of recognizable harm to appellee. Furthermore, appellant has taken satisfactory steps to correct the discrepancies. Thus, recognizing the scope of our discretion in this matter, Hagan v. Whitman, 356 F.2d 742, 745 (9th Cir. 1966), we have denied the motion.

Regulations (causes #11316 and 11358) and once disobeying the lawful orders of the Indian Tribal Court relating to off-reservation fishing regulations (cause #11336). He was sentenced as follows: (#11316) $80.00 plus $2.50 court costs or a thirty-day suspension from any fishing activities; (#11336) $50.00 and $2.50 costs or 30 days; (#11358) $120.-00 and $2.50 costs or 90 days.

Appellant then appealed to a tribal appellate court and posted a bond pending appeal. Before he perfected that appeal and while it was still pending, however, appellant petitioned the federal district court for a writ of habeas corpus, claiming that the tribal court proceedings were in violation of his Fifth and Sixth Amendment rights. In dismissing that petition, the court reasoned that it had no jurisdiction over the subject matter or to hear the petition since a treaty, ratified on March 8, 1859, between the United States and the Yakima Indian Nation conferred on that Indian Nation exclusive jurisdiction of the fishing rights delineated in the treaty.[3]

The contentions advanced by appellant herein are twofold. First, he claims that the case of Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965), is controlling. In *Colliflower* this court held a federal district court has jurisdiction to issue a writ of habeas corpus for the purpose of determining the validity of detention of an Indian convicted of criminal trespass by the Tribal Court of the Fort Belknap Indian Community. Second, he claims that although the Treaty of 1859 gives the Yakima Nation the right to take fish at "all usual and accustomed places" off the Indian Reservation, it does not confer upon that Nation exclusive jurisdiction to regulate such fishing so as to divest a federal district court of subject-matter jurisdiction where it is claimed that the scope and procedural means of regulation were violative of the federal Constitution.

Appellee contests this appeal on four primary grounds, none of which have merit.

I.

The first ground is that relied upon by the district court: A federal district court has no jurisdiction to entertain a petition for writ of habeas corpus respecting internal tribal matters. Appellees claim that unless Congress has established restraints on Indian self government (as it did in the Indian Civil Rights Act of 1968, 25 U.S.C.A. § 1301 *et seq.* (Supp.1969)), the tribe retains sovereign authority over its internal affairs and thereby exercises final authority. They claim that regulation of Indian fishing is such an internal affair. Furthermore, they would distinguish the *Colliflower* case as follows: (1) *Colliflower* involved prosecution of an Indian for criminal trespass rather than for an "internal matter" such as regulation of fishing; and (2) *Colliflower* turned on the fact that the Fort Belknap Indian Tribal Court functioned in part as a federal agency, whereas the Yakima Tribal Court does not function as such. They make the latter distinction on the basis that the Fort Belknap Courts were federally funded (a specific finding of the *Colliflower* court), while the Yakima Courts are not.

We concede that as a general rule the regulation of Indian fishing is an internal affair of the Yakima Nation under the authority of the Treaty of 1859. The Indian Nation has exclusive authority to regulate the time, place and manner of Indian fishing on the reservation (just as the several states have exclusive authority to exercise the police power) in the absence of the exercise of paramount authority by the United

3. A pertinent part of the document, page 953, paragraph 1, reads as follows:
  "The exclusive right of taking fish in all streams, where running through or bordering said reservation, is further secured to said confederated tribes and bands of Indians, as also the right of taking fish at all usual and accustomed places, in common with citizens of the Territory * * *."

States. The very definition, however, indicates that the Indians' exclusive authority is not boundless. The attempt by a state to prosecute its citizens in a summary and arbitrary fashion may be successfully attacked, as may an attempt to regulate certain activities of its domiciliaries without the state. Likewise (without expressing any opinion on the merits of the constitutional issues in the present case), although the Fourteenth Amendment may not apply to tribal courts, there must be and is a limit to the "exclusive" authority of the Yakima Nation to regulate Indian fishing when that regulation becomes so summary and arbitrary as to shock the conscience of the federal court, or goes beyond the scope of authority originally contemplated by the Treaty of 1859. *Colliflower* involved review of a criminal prosecution for trespass, and trespass by an Indian upon another Indian's land within the reservation might be said to be an "internal affair" of the Indian Nation. Yet this court held that there was room for review. We see no basis for distinguishing the present criminal prosecution for violation of a fishing regulation from the *Colliflower* criminal trespass prosecution. Neither species of regulation concerns affairs so "internal" that an Indian prosecuted for violation of such a regulation should be prohibited from testing the jurisdiction of the tribal court, or be denied a fair hearing in tribal courts.

Appellee's contention that *Colliflower* is distinguishable because the Yakima Tribal Courts are not federally funded, is unconvincing. On the one hand, the Yakima Tribal Courts are not actually financially independent from the federal government. The Yakima Nation court system and laws, according to appellant's counsel, cannot be modified without the consent of the federal government; thus, the officials who have final authority to approve or reject legal changes are paid by the federal government. On the other hand, our reading of the *Colliflower* case is that federal funding of the Fort Belknap Tribal Courts was merely one factor considered in finding that such courts were at least in part a federal agency. More important in the *Colliflower* determination was the historical origin of the tribal courts and their scope of authority. (See 342 F.2d at 379.)

Analysis reveals that the Yakima Courts have developed in part as a federal agency similar to the Fort Belknap courts. The tribal courts in either case were organized pursuant to the executive order of the Secretary of the Interior of April 10, 1883 and approved by Congress in an Appropriation Act in 1888, 25 Stat. 217. The parties here assure us that the Yakima Courts still exist under this authority. *Compare* Colliflower v. Garland, *supra,* at 372–374 *with* Reply Brief for Appellant at p. 3, Settler v. Yakima Tribal Court, No. 22,815, *and* Brief for Appellee at p. 7, *id.* The courts so organized were contemporaneously described as " * * * mere educational and disciplinary instrumentalities, by which the government of the United States is endeavoring to improve and elevate the condition of these dependent tribes to whom it sustains the relation of guardian." United States v. Clapox, 35 F. 575, 577 (D.Ore.1888). Furthermore, the Yakima Law and Order Code has been taken almost verbatim from the regulations of the Bureau of Indian Affairs, 25 C.F.R. § 11.1 *et seq.*, as was the Fort Belknap Law and Order Code. Thus, when we consider the previously mentioned inability of the Yakima Courts to make legal changes without approval by the federal government, we cannot accept appellee's contention that *Colliflower* is distinguishable in any significant way from the present case.

## II.

The second point pressed by appellee is that this case should be dismissed even if the district court has jurisdiction since habeas corpus is not available to a petitioner who is not "in custody" within the meaning of 28 U.S.C. § 2241. We believe, however, that the writ of habeas corpus is available to one who, like appellant, has been fined by an Indian

Tribal Court and has posted a bond pending procedural review by an Indian appellate court. (Note that we deal (*infra*, IV.) with the exhaustion of remedies issue.) Appellee cites no case directly supporting its position. In fact, in the most recent case cited, Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), the Supreme Court held that a prisoner placed on parole is "in custody" within the meaning of 28 U.S.C. § 2241 so as to give him sufficient standing to request habeas corpus. The Court noted in its analysis that "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Id.* at 240, 83 S.Ct. at 376; *see, e. g.,* Brownell v. We Shung, 352 U.S. 180, 183, 77 S.Ct. 252, 1 L.Ed.2d 225 (1953) (habeas corpus available to an alien seeking entry into the United States even though he is free to go anywhere else in the world); Ex parte Fabiani, 105 F.Supp. 139 (E.D.Pa.1952) (habeas corpus appropriate procedural vehicle for testing legality of induction into the military); Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962) (habeas corpus available to parents disputing proper custody of child).

The availability of habeas corpus appears particularly appropriate where the petitioner, although not held presently in physical custody, has no other procedural recourse for effective judicial review of the constitutional issues he raises. That is the predicament faced by the appellant here; if habeas corpus is not available, the Yakima Indian Nation can conceivably avoid the imposition of any due process safeguards merely by rendering fines rather than prison sentences.[4]

### III.

Appellee's third point is that the Yakima Tribal Court is not a "person" to whom an application for a writ of habeas corpus can be directed. The appropriate section of the United States Code provides that "the writ * * * shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243 (1964). Appellee argues that the Tribal Court is not appellant's custodian. We think it appropriate in this case, however, since there was and is no actual physical custodian (as was true in Jones v. Cunningham, *supra*), that appellant has named as a respondent the court which imposed the fine and to which the bond was paid pending appeal. It is that court (or the person heading or acting for that group) as much or more than any other possible party, that is responsible for the alleged unconstitutional deprivation of appellant's liberty. In view of our disposition of this appeal, we leave to the district court the naming of the precise individual who heads, or otherwise is in a position to act for, the Tribal Court, or if that person cannot be ascertained, the naming of all the individual members of that court.

### IV.

The final point pressed by appellee is that this case should be dismissed because appellant did not exhaust his available remedies—appellate review by a tribal court. This contention must also be rejected since an Indian appellate tribunal has no power to reverse the decision of the tribal court on the grounds urged by appellant: It has no power to declare portions of the Yakima Tribal Code unconstitutional by federal standards nor authority to determine the ultimate jurisdictional scope of the lower tribal court. *See* United States Constitution, Art. III, § 1. And see Colliflower v. Garland, *supra*, where there was no indication by this court that tribal ap-

4. Cf. Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264, decided December 8, 1969, n. 4.

pellate review is a prerequisite for standing to challenge by way of federal habeas corpus a tribal court conviction.

Thus, we hold that the district court erred in concluding that it had no jurisdiction to hear appellant's petition. Without expressing any opinion on the merits of the constitutional issues raised by appellant, we vacate the dismissal below and remand for further proceedings in the district court.