**UNITED STATES of America,**
**Appellee,**

v.

**Percy KILLS PLENTY, Appellant,**
**No. 71–1661.**

United States Court of Appeals,
Eighth. Circuit.

Submitted May 10, 1972.
Decided Sept. 13, 1972.

John J. Simpson, Winner, S. D., for appellant.

Edward Carpenter, Asst. U. S. Atty., William F. Clayton, U. S. Atty., Sioux Falls, S. D., Robert D. Hiaring, Asst. U. S. Atty., for appellee.

Before MATTHES, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

The root question in this criminal case is centered on the doctrine of collateral estoppel. The operative facts are important.

Percy Kills Plenty, appellant, is an Indian. On September 5, 1970, he was driving an automobile in Indian country within the Rosebud Indian Reservation. The automobile collided with another motor vehicle proceeding in the opposite direction. Raymond Matthew Good Kill, a passenger in appellant's automobile, sustained injuries which proved fatal. A criminal complaint was filed on September 11, 1970, in the Rosebud Sioux Tribal Court, by "Rosebud Sioux Tribe, Plaintiff," charging appellant with driving while under the influence of intoxicating liquor in violation of Section 2.7 of Chapter 12 of the revised law and order code of the Rosebud Sioux Tribe.[1] A jury trial in the Rosebud Sioux Tribal Court on January 18, 1971, resulted in appellant's acquittal.

On May 21, 1971, an indictment was filed in the United States District Court for the District of South Dakota charging that appellant had committed invol-

---

1. Section 2.7 provides in essence that it is unlawful for any person who is under the influence of intoxicating liquor to operate a motor vehicle upon the highways. Violation of that Tribal Law carries a penalty not to exceed 90 days imprisonment or a fine of not more than $50 or both such imprisonment and fine. Additionally, the offender is deprived of the right to operate a motor vehicle for a specified time.

untary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153.[2]

The case came on for trial September 23, 1971. At the outset of the proceedings, appellant's counsel moved for dismissal of the charge on the grounds of double jeopardy or collateral estoppel. Counsel reasoned that involved in the manslaughter charge was the element of driving while intoxicated, that this issue had been litigated in the tribal court, and that appellant had been acquitted of that offense and therefore could not be tried for manslaughter because intoxication was an integral part of the manslaughter charge. The government resisted the motion and it was denied. During the arguments prior to the court's ruling, the United States Attorney stated, inter alia, "It is the government's position that it is not necessary for the government to establish that Mr. Kills Plenty was, in fact, intoxicated in order to establish the offenses [sic] as set out in the indictment . . . ." This statement prompted appellant's counsel to move to strike from the indictment the following clause: "by operating or driving a motor vehicle while under the influence of intoxicants." This motion also was denied.

There was evidence pro and con bearing upon appellant's condition immediately prior to and following the collision. Some witnesses testified that they smelled alcohol in and about appellant's automobile. The testimony of others indicated that appellant was not intoxicated. The doctor who examined appellant in the hospital where he had been taken for treatment of the injuries he had suffered was of the opinion that appellant was intoxicated.

From other evidence the jury could find that appellant operated his automobile on the left or wrong side of the highway and into collision with the oncoming automobile and thus committed an act in an unlawful manner. Appellant attempted to persuade the jury to believe he turned to his left because he was blinded by the lights of an automobile approaching him on his side of the highway.

In submitting the case to the jury the court instructed that the essential elements of involuntary manslaughter are:

(1) The unlawful killing of a human being without malice;

and

(2) "That such killing was done in the commission of a lawful act which might produce death and that such act was done either in an unlawful manner or without due caution or circumspection."

Additionally, the court instructed "that it is unlawful to operate a motor vehicle upon a public highway while in a state of intoxication." The jury returned a verdict finding appellant guilty as charged.

From the judgment of conviction committing appellant to imprisonment for two years this appeal was taken.

---

2. In pertinent part, the indictment charged that on or about the 5th of September, 1970, appellant, an Indian, in Indian Country, within the Rosebud Indian Reservation, did willfully and unlawfully "engage in the commission of a lawful act in an unlawful manner, by operating or driving a motor vehicle while under the influence of intoxicating liquor and without due caution and circumspection" and "in such a manner so as to collide with another car which caused the death of his passenger, Raymond Matthew Good Kill," and did thereby commit the crime of involuntary manslaughter.

18 U.S.C. § 1112 provides that involuntary manslaughter is the killing of a human being without malice in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death.

18 U.S.C. § 1153, commonly referred to as the major crime act, provides in pertinent part that any Indian who commits against the person or property of another Indian, or any other person certain enumerated offenses, including manslaughter, shall be subject to the same laws and penalties as all other persons committing the enumerated offenses, within the jurisdiction of the United States.

Seeking an outright reversal and discharge, appellant advocates strongly and with conviction that this case falls within the ambit of the doctrine of collateral estoppel. Appellant argues, as he must in order to prevail, that the controlling issue litigated in this case was whether he drove and operated his automobile while intoxicated, an issue which he says was foreclosed and settled by his acquittal on the same charge in the tribal court. Appellant also submits, as he must if he is to obtain the relief sought, that the Rosebud Sioux Tribal Court and the United States District Court are arms of the same sovereign, *i. e.*, the United States. The government takes issue with both of appellant's premises, asserting first that driving while intoxicated and involuntary manslaughter are separate and distinct offenses and next that the tribal court and the United States District Court cannot be considered arms of the same sovereign. In support of the former contention, the government argues that the ultimate factual issue litigated in the tribal court was that of legal intoxication, whereas the ultimate question in the federal prosecution was whether appellant had committed involuntary manslaughter within the meaning of the applicable statutes. The government contends further that mere admission of evidence regarding intoxication is insufficient to bar this prosecution under the doctrine of collateral estoppel.

■ The rule of collateral estoppel is "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Thus for collateral estoppel to bar a criminal prosecution, two factors must be present: (1) both adjudicatory entities must be arms of the same sovereign and (2) a factual issue essential

to the first verdict must be an essential element of the second charge. In order to prevail in the present case, appellant must persuade the court that (1) the tribal courts and federal district courts are arms of the same sovereign *and* (2) the question of intoxication, which clearly was resolved in the first trial, is an essential element of involuntary manslaughter. This he has failed to do.

■ We pretermit discussion of the troublesome contention that tribal courts and United States District Courts derive their adjudicatory powers from the same sovereign.[3] It is our conclusion that the collateral estoppel contention advanced in this case may be disposed of on the government's alternative position. Whether or not the tribal court and the federal court are arms of the same sovereign, we are not persuaded that the two cases share an ultimate factual issue. The sole question in the tribal court was whether appellant had been intoxicated while operating his automobile. The essential and decisive question in the federal district court was whether appellant had committed involuntary manslaughter as defined statutorily. See note 2, *supra*. The question of whether appellant had been intoxicated at the time of the collision clearly was not of ultimate significance in the latter case. Cf. United States v. DeMarrias, 441 F.2d 1304, 1306 (8th Cir. 1971). We hold therefore that this prosecution is not barred by collateral estoppel.

Remaining for our consideration are appellant's contentions that (1) he was denied equal protection and due process because the district court refused to order defense witnesses subpoenaed pursuant to Rule 17(b), Fed.R.Crim.P., and (2) he was prejudiced by improper argument of the United States Attorney. Neither claim is meritorious.

■ Appellant sought, by pretrial motion, to subpoena 27 witnesses. All but eight of the 27 were subpoenaed at the

---

3. Although we pretermit this issue, it is our view that the Tribal Courts are not arms of the same sovereign as the Unit-

ed States District Court. Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89 (8th Cir. 1956).

expense of the United States. The court's reason for declining to order subpoenas for the other 8 witnesses was fully delineated in a letter to appellant's counsel. The court took pains in this letter to point out that appellant was unable to give the court any satisfactory reason for having the 8 witnesses brought into court, and that appellant had been unable to inform the court as to whether the witnesses had information which would have been relevant to the charge and of assistance to appellant's defense.

It is settled beyond doubt that the issuance of subpoenas under Rule 17(b) is a matter within the sound discretion of the court. United States v. Morris, 451 F.2d 969, 971–972 (8th Cir. 1971); Slawek v. United States, 413 F.2d 957, 959–960 (8th Cir. 1969); Terlikowski v. United States, 379 F.2d 501, 507–508 (8th Cir. 1967). We find no abuse of discretion. In this connection it is significant to note that of the 19 witnesses subpoenaed appellant called only six. No explanation of why the remaining 13 were not used has been brought to our attention.

Finally, we find nothing improper in the closing argument of the United States Attorney. We are satisfied that what was said did not in the least prejudice the appellant or influence the jury in arriving at its verdict of guilty.

Finding no error, we affirm the judgment of conviction.

HEANEY, Circuit Judge (dissenting).

I would reverse the appellant's conviction and remand the matter to the District Court for a new trial, because the same parties relitigated the issue of intoxication in violation of the constitutional principle of collateral estoppel. See, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

It is undisputed that the issue of intoxication was litigated in both the Tribal and District Courts, but it is argued that the principle of collateral estoppel is inapplicable because intoxication is not an essential element of the crime of involuntary manslaughter. Cf., United States v. DeMarrias, 441 F.2d 1304, 1308 (8th Cir. 1971).[1]

Proof of intoxication, of course, is not an essential element of every prosecution for involuntary manslaughter. But if the proceedings in the District Court are viewed in their entirety and from a practical point of view, it is clear that proof of intoxication was an essential element and a fact of ultimate significance in this particular prosecution.[2] In the Dis-

---

1. United States v. DeMarrias, 441 F.2d 1304 (8th Cir. 1971), is of no help to the government. The Court there recognized that collateral estoppel was not relevant. In DeMarrias, the defendant had been convicted of drunk driving before being prosecuted for manslaughter. Because the prior trial resulted in a conviction, no issue in it had been resolved favorably to the defendant. Furthermore, the charge of manslaughter in DeMarrias, unlike the charge in this case, was not based on the drunk driving charge. Instead, the manslaughter indictment in DeMarrias charged that the defendant had been speeding and driving recklessly.

2. I think it helpful to briefly summarize those aspects of the record which deal with the issue of intoxication.
    (1) The summary of the indictment states that the appellant did "engage in the commission of a lawful act in an unlawful manner, by operating or driving a motor vehicle *while under the influence of intoxicants* and without due caution and circumspection." (Emphasis added.)
    (2) Prior to trial, the defense attorney requested that the portion of the indictment referring to intoxication be stricken. This request was denied.
    (3) The government introduced testimony at the trial to show that the appellant was driving under the influence of intoxicating liquor. This evidence was similar to that introduced in the Indian Tribal Court.
    (4) In closing his final argument to the jury, the prosecuting attorney stated, "And if Mr. Kills Plenty hadn't been drunk and driving down the wrong side of the road, there never would have been an accident."
    (5) The court instructed the jury that it might find the appellant guilty of in-

trict Court, one theory on which the appellant's guilt was predicated was that the accident had occurred because the appellant was driving while intoxicated, in violation of the traffic laws. It was, therefore, argued that the appellant killed the victim in the commission of a lawful act in an unlawful manner in violation of 18 U.S.C. § 1112. The jury instructions indicated that proof of the theory that the appellant had been driving while intoxicated was sufficient to support a finding of guilt, without any additional finding that the appellant had been driving without due care or had been violating any other traffic law. Under this theory, proof that the appellant was intoxicated was essential and would invoke the sanctions of the law against the appellant.[3]

It is true that the jury may have convicted the appellant on the basis of another theory of guilt, i. e., driving on the wrong side of the road; but we cannot assume, on the basis of a general verdict, that they did not convict the appellant on the basis of driving while intoxicated. United States v. Williams, 464 F.2d 927 (8th Cir. 1972). Because the issue of intoxication had been conclusively determined in the Tribal Court in favor of the appellant, it was error to submit this theory of the case to the jury.[4]

Furthermore, even if intoxication were not an essential element of involuntary manslaughter, it would still be error to relitigate it.[5] United States v. Kramer, 289 F.2d 909 (2nd Cir. 1961). In *Kramer*, as here, the government contended that collateral estoppel applies only to "an issue essential to a conviction in the second trial." *Id.* at 915. Judge Friend-

---

voluntary manslaughter if found that the appellant had done an act *"either in an unlawful manner* or without due caution or circumspection."* (Emphasis added.) He then instructed the jury that "it is unlawful to operate a motor vehicle upon a public highway while in a state of intoxication." The court further added: "Either of the stated ways of performing the act, in conjunction with the other elements, is sufficient to constitute the crime charged, and it is not necessary to show both that the act was done in an unlawful manner and without due caution and circumspection."

3. Judge Learned Hand defined ultimate facts as "those which the law makes the occasion for imposing its sanctions." Evergreens v. Nunan, 141 F.2d 927, 928 (2nd Cir. 1944).

4. In State v. Heitter, 203 A.2d 69 (Del. 1964), the court held that after a magistrate's acquittal on the charge of drunk driving, a defendant could not be charged with manslaughter by motor vehicle on the grounds that he had been drunk, but that he could be tried on the theory that he had been violating the speeding laws. See also, Martinis v. Supreme Court, 15 N.Y.2d 240, 258 N.Y.S.2d 65, 206 N.E.2d 165 (1965) (J. Burke, concurring).

5. In the recent case of Wingate v. Wainwright, 464 F.2d 209 (5th Cir. 1972), the Court also rejected the contention that collateral estoppel applies only to issues essential to the second prosecution. Judge Gewin, writing for the Court, stated:
"* * * Certainly where an issue has been determined in a prior prosecution, the state is barred from bringing any subsequent prosecution in which a different determination of that issue is necessary to prove the offense charged. But we are unable to find in either the older cases applying the doctrine of collateral estoppel or the more recent Supreme Court cases any basis for limiting the prohibited relitigation of a previously resolved issue to only those suits where the relitigation is essential for the maintenance of the subsequent lawsuit. * * *

"We do not perceive any meaningful difference in the quality of 'jeopardy' to which a defendant is again subjected when the state attempts to prove his guilt by relitigating a settled fact issue which depends upon whether the relitigated issue is one of 'ultimate' fact or merely an 'evidentiary' fact in the second prosecution. In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial. * * *" (Citations omitted.)
*Id.* at pp. 213-214.

ly, writing for the Court, rejected this contention stating:

"We see no basis in reason for a limitation so narrow. A defendant who has satisfied one jury that he had no responsibility for a crime ought not be forced to convince another of this, even in a prosecution where in theory, although very likely not in fact, the Government need not have tendered the issue. * * * [T]o permit the Government to force a defendant who has won an acquittal to relitigate the identical question on a further charge arising out of the same course of conduct, selected by the Government from the extensive catalogue of crimes furnished it in the Criminal Code, would permit the very abuses that led English judges to develop the rule against double jeopardy long before it was enshrined in the Fifth Amendment, 3 Holdsworth, History of English Law, 614,—and still longer before the proliferation of statutory offenses deprived it of so much of its effect. See Mr. Justice Brennan's separate opinion in Abbate v. United States, 1959, 359 U.S. 187, 196, 201, 79 S.Ct. 666, 3 L.Ed.2d 729. The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, * * * to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be."

*Id.* at 915–916.

See, Yawn v. United States, 244 F.2d 235 (5th Cir. 1957); United States v. Simon, 225 F.2d 260 (3rd Cir. 1955); United States v. De Angelo, 138 F.2d 466 (3rd Cir. 1943). See also, United States v. Phillips, 401 F.2d 301 (7th Cir. 1968).

Here, the government had the right to establish the appellant's guilt for the crime of involuntary manslaughter, despite the appellant's prior acquittal in the Indian Tribal Court of the crime of driving under the influence of intoxicating liquor. It could do so by showing, for instance, that the appellant was driving for some time on the wrong side of the road causing four other drivers to swerve to avoid an accident. It could not, however, prove that the appellant was guilty of involuntary manslaughter by relitigating the issue of intoxication already determined in the appellant's favor in the Tribal Court. Cf., Yawn v. United States, *supra,* 244 F.2d at 237.

Finally, I cannot say beyond a reasonable doubt that the introduction of evidence relating to intoxication was harmless error. As I stated above, the appellant may very well have been convicted solely on the theory that he was driving while intoxicated. Furthermore, I cannot say that the proof of intoxication did not influence the jury in its evaluation of the appellant's character and his credibility. It is particularly likely to have been damaging here where the intoxication was intimately related to the crime charged. *Cf.,* United States v. Crawford, 438 F.2d 441, 446 (8th Cir. 1971).

Because I would hold—assuming the same parties were involved—that the facts of this case required application of the principle of collateral estoppel in the District Court below, it is necessary to consider whether or not there is the requisite identity of parties in the two prosecutions. I would hold that in view of the extensive authority possessed and exercised by the United States Government over the Rosebud Sioux Tribe's judicial system, these two entities are the same parties for the purpose of applying collateral estoppel in criminal cases. This holding is consistent with the rationale behind the "same parties" requirement which is to assure that in both of two successive litigations on the same issue, the respective interests of the parties are identical or substantially similar. See, 1B J. Moore, Federal Practice ¶ 0.411 [1] at 1252–1259 (2nd ed., 1965).

The government argues that because in various contexts we have recognized that the Indian tribes possess inherent sovereignty, see, Kills Crow v. United States, 451 F.2d 323 (8th Cir. 1971); Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8th Cir. 1956), we must find that the Rosebud Sioux Tribe and the United States Government are separate sovereigns and, thus, they are different parties for the purpose of applying collateral estoppel. With these contentions, I disagree.

The government cites a number of decisions in which it has been held that the doctrine of double jeopardy does not apply to successive prosecutions by separate sovereigns. In each of those cases, the respective separate sovereigns were the state and federal governments.[6] The justification for the refusal to find that the defendant is protected from successive prosecutions under those circumstances is founded in the nature of federalism and the belief that both the state and federal governments have separate interests which can be protected only by allowing successive prosecutions despite the fact this allows an individual to be tried twice for the same offense. See, Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), and Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).[7] This justification is not available in this case because the relationship which exists between the Indian tribes and the federal government is not analogous to the relationship between state and federal governments.

It is true that our decisions in *Kills Crow* and *Iron Crow* recognize that the Indian tribes possess the inherent power to establish their Tribal Courts without the action of the federal government.

In this respect, the position of the Indian tribes resembles that of the states. But, the nature of the Indian tribes differs significantly from that of the states in that the federal government has plenary authority over the jurisdiction and functioning of the Indian courts. It has exercised this to such a great extent that one Court has found:

> "In spite of the theory that for some purposes an Indian tribe is an independent sovereignty, we think that, in the light of their history, it is pure fiction to say that the Indian courts functioning in the Fort Belknap Indian community are not in part, at least, arms of the federal government. * * * "

Colliflower v. Garland, 342 F.2d 369, 378–379 (9th Cir. 1965). See also, Settler v. Yakima Tribal Court, 419 F.2d 486 (9th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1690, 26 L.Ed.2d 61 (1970).

Evidence of the close and firm control which the federal government potentially may exercise and has exercised over the Indian Tribal Courts is plentiful. While the Indian tribes inherently possess criminal jurisdiction over offenses committed by Indians in Indian country, the federal government, at any time, through congressional act, may alter or completely remove this jurisdiction as it sees fit. See, Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

History is replete with instances in which the federal government has altered this jurisdiction and Indian Tribal Court procedures. Beginning with the Seven Major Crimes Act of 1885, Ch. 341, § 9, 23 Stat. 385, and continuing through 1968, Congress has removed from the jurisdiction of the Indian courts a total

---

6. But see, United States v. La Plant, 156 F.Supp. 660 (D.Mont.1957), where the court stated that the protection against double jeopardy requires that when a man has been convicted of a crime in an Indian Tribal Court, a subsequent prosecution for the same crime in federal District Court is barred on the reasoning that " * * * the judgment of a regularly established tribal court is valid for all purposes * * * ". *Id.* at 665.

7. But see, the dissenting opinions of Mr. Justice Black, with which I am sympathetic, in Abbate v. United States, 359 U.S. 187, 201–204, 79 S.Ct. 666, 3 L.Ed. 2d 729 (1959) and Bartkus v. Illinois, 359 U.S. 121, 150–164, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

of thirteen crimes it has deemed to be major. 18 U.S.C. §§ 1153 and 3242. Jurisdiction over these crimes has been given to the federal District Courts. Similarly, the federal government has seen fit in certain instances to remove all criminal offenses from the jurisdiction of the Tribal Courts and has placed them within the jurisdiction of the specified state courts even without the consent of the affected tribes. 18 U.S.C. § 1162.

A reading of the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301–1341, reveals additional regulation of the Indian courts by the federal government. Among the provisions of this act are those which specify the maximum penalties which Tribal Courts may impose upon convicted defendants, 25 U.S.C. § 1302(7), allow states with the consent of the affected Indian tribes to assume jurisdiction over criminal offenses committed in Indian country, 25 U.S.C. § 1321(a), and set out a list of other rights—including six-man juries and review of Tribal Court detention orders by federal District Courts through issuance of writs of habeas corpus—which must be provided to participants in tribal criminal proceedings. 25 U.S.C. §§ 1302, 1303.

The Rosebud Sioux Tribal Constitution itself is also indicative of the federal government's control over the tribe's criminal justice. This constitution was adopted by the tribe in accordance with the requirements of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 et seq., and was approved as required, 25 U.S.C. § 476, by the Secretary of Interior. Article IV, § 1(k) of the constitution provides, under its enumerated powers, that the Tribal Council has the power to "promulgate and enforce ordinances." However, this power is subject to limitations imposed by statutes or the Constitution of the United States and review by the Secretary of Interior. In addition, it should be noted that the tribal judge in this case was appointed and paid by the federal government.

Under these circumstances, I have no difficulty in finding that the interests of the Rosebud Sioux Tribe and the United States Government were sufficiently similar or identical so that they warrant being considered as the same party. The basic goal of both the Indian tribe and the federal government here was to protect the public from criminal acts of Indians committed in Indian country. The pattern of federal government interference with tribal criminal justice has been brought about in part because the interests of the federal government in the Indian criminal justice system are so very similar to those of the tribes themselves. Furthermore, through its plenary power over the Rosebud Sioux Tribe, I think it is clear that the federal government, which historically has protected the Indians as its wards, see, Kills Crow v. United States, *supra,* also has the power to protect its own interests without depriving individual Indians of the benefits of the constitutional principle of collateral estoppel.

To reach a contrary result is to ignore the realities and casts grave doubts as to the legitimacy and integrity of the decisions of Indian Tribal Courts which the federal government itself closely supervises. The least we can do is to respect and give full effect to the verdicts of those courts in criminal cases. To do otherwise is to require those adjudged innocent in the Tribal Court, as the appellant was here, to " 'run the gauntlet' a second time" when no justification is present. Ashe v. Swenson, *supra,* 397 U.S. at 446, 90 S.Ct. at 1195, 25 L.Ed.2d 469, quoting from Green v. United States, 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

For these reasons, I believe it necessary to grant the appellant a new trial, at which the government will be precluded from relitigating the issue of intoxication. This procedure would be in accord with that adopted by Judge Friendly in *Kramer,* and with the Courts in *Yawn, Simon* and *DeAngelo.*