## LEE v. THE STATE.

CRIMINAL LAW—*Jeopardy of life and limb.*—The principle that a person cannot be twice placed in jeopardy of life or limb for the same offense, and embraced in the Constitutions of most of the States and the Union, is borrowed from the common law, and the decisions are not uniform as to the time when the jeopardy attaches.

BILL OF RIGHTS.—The provisions of the bill of rights, contained in the Constitution of this State, differ from those of most, if not all the other States. It was the intention of the framers of the present Constitution to place a limitation on the legislative branch of the government, and to inhibit it from enacting any law imposing penalties on persons who had once been acquitted by a jury, for the same offense; but this does not deprive the prisoner of his common law rights.

WHEN COURT MAY DISCHARGE JURY.—It is competent for the court, when the jury cannot agree, to discharge them and hold the accused for trial, on the same indictment, by another jury—as also, where a juror in course of the trial becomes so ill, or the prisoner becomes so sick, or in like cases of impossibility to proceed—but beyond this the authority of the court does not extend.

WHAT OPERATES AS AN ACQUITTAL.—Where the indictment is sufficient in form and substance, and the defendant is arraigned, pleads, and the jury is impaneled and sworn to try the issue, it is to be presumed that the defendant is demanding a speedy trial, and a dismissal of the indictment by the court, without the consent of the defendant, and holding him to answer another indictment for the same offense, operates as an acquittal.

Section 178, Code of Criminal Practice, does not authorize the court to dismiss a valid indictment, after arraignment, plea and impaneling of the jury, so as to hold the accused for trial on another indictment for the same offense.

WHEN TIME NOT MATERIAL.—In an indictment for murder, the time of committing the murder is not material, if it appear that it was committed before the finding of the indictment.

PLEA OF FORMER ACQUITTAL.—Where the defendant pleaded former acquittal and not guilty at the same time, the plea of former acquittal should be first tried, and if the plea be found against him, the judgment should be, that he answer the indictment.

*Appeal from Jefferson Circuit Court.*

HON. HENRY B. MORSE, Circuit Judge.

*Williams, Crawford & Cameron*, for appellant.

The appellant submits the following :

*First.* That the appellant was put in jeopardy of his life by being put on his trial on the merits in the former indictment in the same case; and that his trial under the indictment under which he was convicted, was putting him in jeopardy of his life twice, which should not be done. *Constitution of U. S., 5th Amendment.*

*Second.* When the defendant pleads to the indictment, and a traverse jury is impaneled and sworn to try the cause, the jeopardy begins. *Bishop on Crim. Law, 856; Commonwealth v. Tuck, 20th Pick., 356, 364; Clark v. State, 23d Miss., 261; The State v. McKee, 1st Bailey, 651; The State v. Blackwell, 9th Alabama, 79; Lindsay v. Commonwealth, 2d · Va. Cas., 345; Wortham v. Commonwealth, 5th Rand., 669; Commonwealth v. Wheeler, 2d Mass., 172; U. S. v. Stowell, 2d Curt. C. C., 153, 170; The State v. Thornton, 13 Ire., 256; The State v. Thompson, 3 Hawks, 613; Rex v. Rapee, 1st Crawf. & Din. C. C., 185; Rex v. Wade, 1st Moody, 86; Newsom v. State, 2d Kelly, 60; Reynolds v. State, 3d Kelly, 53; Durham v. State, 9th Ga., 306.*

*Third.* The jury being full and sworn, jeopardy attaches, from the repetition of which the constitutional rule protects a defendant. *Bishop Crim. Law, 858; State v. Redmond, 17th Iowa, 329, 333; State v. Walker, 26th Indiana, 346.*

*Fourth.* During the trial, the prosecuting attorney is not authorized to enter a *nolle prosequi;* or, if he enters it even with the consent of the judge, and if he withdraws a juryman and so stops a hearing, the legal effect is an acquittal. *Bishop Crim. Law, 858.* See cases recited under second point, and also *Klock v. People, 2d Parker, C. C., 676.*

*Fifth.* The defendant in such case is entitled to have a verdict of not guilty returned by the jury; but if this is not done, he may still claim his discharge, and he is not to be brought again in jeopardy for the same offense. *Bishop Crim. Law, 858; U. S. v. Shoemaker, 2d McLean, 114; Mount v. The*

*State, 14th Ohio, 295, 305; Reynolds v. The State, 3d Kelly, 53; Parker v. The State, 8th Blackf., 540; People v. Barrett, 2d Caines, 304; Commonwealth v. Tuck, 20th Pick., 356; Ward v. The State, 1st Humph., 253; Grubble v. The State, 2d Green, Iowa, 559.*

A defendant who has been placed on his trial, upon the merits, in a court of competent jurisdiction, has been put in legal jeopardy (by analogy,) *State v. Cheek, 25th Ark., 206.*

*Montgomery,* Attorney General, for appellee.

There is but one question presented to this court: Was the prisoner placed in jeopardy of life and liberty twice for the same offense? We submit he was not. See *Sutcliff v. The State. 18 Ohio, 409, 478; The People v. Oswell, 28 Cal., 456; Shephard v. People, 25 N. Y., 406, 418; Rake v. Pope, 7 Ala., 161; The State v. De Witt, Hill (S. C.), 282; Penn v. Huffman, Addison, 140; Commonwealth v. Mortimer, 2 Va. Cases, 325; Commonwealth v. Wade, 17 Pick., 395, 400; People v. Warren, 1st Parker, 338; Vaughan v. Commonwealth, 2 Va. Cases, 273.*

WILSHIRE, C. J.

At the May term of the Jefferson circuit court, Doctor T. Lee was indicted and tried for the murder of Ida Maria Dota, *alias* Ida Maria Lanfair, the indictment charging the murder to have been committed on the 22d day of September, 1869.

It appears from the transcript that the defendant plead not guilty, to which issue was joined, a jury impaneled, the witnesses sworn and put under the rule, and the cause stated to the jury by counsel, for both the defendant and the State. At this stage of the proceedings, the attorney for the State suggested to the court a variance between the date on which the murder was alleged in the indictment to have been committed and the date alleged in the original affidavit. Whereupon the court below dismissed the indictment, and referred

the case to the grand jury, then in session, who found and presented to that court another indictment, charging Lee with the murder of the said Ida Maria Dota, *alias* Ida Maria Lanfair, on the 1st day of February, 1870.

Upon the second indictment the defendant was arraigned, and interposed two pleas: *First*, Former acquittal of the offense charged in the indictment by the judgment of that court; and, *second*, "That the State ought to be barred in this behalf, and ought not further to prosecute her said indictment against him, because he says that he has once before this time been put in jeopardy of his life for said offense, by being put upon trial in the circuit court of Jefferson county, at the present term thereof, on the 30th day of May, 1870, under an indictment, good in law, found by the grand jury of said county, at said term, in which said trial the jury was impaneled, the witnesses for the State and the defendant were sworn and put under the rule, the indictment read to the jury, and the case stated by both the counsel for the State and defendant, at which stage of the trial, without the consent of the defendant, the court set aside the indictment, discharged the jury, remanded the defendant to prison, and referred the case again to the grand jury, etc.

To the first plea the State took issue, and demurred to the second plea. The court below sustained the demurrer to the defendant's second plea; to which ruling of the court the defendant excepted.

The cause was tried and the defendant found guilty of murder in the first degree.

The defendant moved for a new trial upon the following grounds:

*First.* That the court erred in sustaining the demurrer to the defendant's second plea.

*Second.* Instructions asked for by the State.

*Third.* That the court erred in refusing to give the first instruction asked for by the defendant.

*Fourth.* That the verdict is contrary to law and evidence.

The court below overruled the motion of the defendant for a new trial, and pronounced the sentence of death upon the defendant, from which he appealed.

The first question demanding attention is that raised by the first ground set up in the motion for a new trial, that the court below erred in sustaining the demurrer to the defendant's second plea, which plea we have thought proper to copy into the statement of this case.

The principle involved in the provision of the Constitutions of most of the States of the Union, as well as that of the United States, that no person shall be subjected for the same offense to be twice put in jeopardy of life and limb, was borrowed from the common law; and, indeed, it has been much doubted whether those constitutional provisions amount to anything more than the common law doctrine involved in the plea of *autrefois acquit*, which plea is founded "upon the principle that no man shall be placed in peril of legal penalties, more than once, upon the same accusation." Wharton, in his treatise on *Criminal Law*, *p. 574*, says that "at common law this doctrine means nothing more than that when there has been a final verdict, either of acquittal or conviction, on an adequate indictment, the defendant cannot a second time be placed in jeopardy for the particular offense; and, at the first glance, the constitutional provision appears nothing more than a solemn asseveration of the common law maxim."

There seems to be a conflict in the authorities as to when the jeopardy attaches. Under the provisions of the Constitutions of some of the States, their courts hold that the jeopardy attaches from the moment, when the defendant, having pleaded to the indictment and a traverse jury is impaneled and sworn to try the cause—in short, when the tribunal is complete in itself to try the cause, and the defendant properly before it, defending, having answered; while the courts of some other States incline to the opinion that the jeopardy of the Constitution begins only with a verdict rendered.

The provision of the Bill of Rights contained in the Consti-

tution of this State, differs perhaps with that of most, if not all the other States.   Section 9, of the Bill of Rights of our Constitution, provides that "no person, after having been once acquitted by a verdict of jury, for the same offense shall be again put in jeopardy of life or liberty; but if, in any criminal prosecution, the jury be divided in opinion, the court before which the trial shall be had may, in its discretion, discharge the jury and commit or bail the accused for trial at the same or the next term of said court."

It is evident to our minds that the language of our Constitution, above quoted, shows that it was the intention of the convention that framed and adopted that instrument, to place a limitation upon the legislative branch of the government; that is, that no law should be enacted authorizing the imposition of penalties on persons who had once been acquitted by a jury for the same offense; but this does not deprive the prisoner of his common law right.   It is quite as evident that the convention intended by the same clause, that in a criminal prosecution, if the jury disagreed, the court, in its discretion, might discharge them and hold the accused to be tried upon the same indictment by another jury.   In the latter case, the Constitution is but a declaration of what the law was held to be before.

Judge COOLEY says that, "in considering State Constitutions, we must not commit the mistake of supposing that, because individual rights are guarded and protected by them, they must also be considered as owing their origin to them.   These instruments measure the powers of the rulers, but they do not measure the rights of the governed."   The learned judge quotes approvingly the language of the Hon. M. Bates, in *Hamilton v. St. Louis county court, 15 Mo. 13*, who said : "What is a Constitution, and what are its objects?   It is easier to tell what it is not than what it is.   It is not the beginning of a community, nor the origin of private rights; it is not the fountain of law, nor the incipient state of government; it is not the cause, but consequence of personal and political freedom;

it grants no rights to the people, but is the creature of their power, the instrument of their convenience. Designed for their protection in the enjoyment of the rights and powers which they possessed before the Constitution was made, it is but the frame-work of the political government, and necessarily based upon the pre-existing condition of laws, rights, habits, and modes of thought. There is nothing primitive in it; it is all derived from a known source. It pre-supposes an organized society, law, order, property, personal freedom, a love of political liberty, and enough of cultivated intelligence to know how to guard it against the encroachments of tyranny. A written Constitution is, in every instance, a limitation upon the powers of government in the hands of agents, for there never was a written republican Constitution which delegated to functionaries all the latent powers which lie dormant in every nation, and are boundless in extent, and incapable of definition." *Cooley on Constitutional Law, 37.*

The authority conferred upon the courts, in criminal prosecutions, by the provision of the Constitution referred to, to discharge the jury, etc., is confined to cases where the jury "is divided in opinion," and cannot, we think, be construed to extend beyond that.

Upon examining the indictment first presented against the defendant, upon which he was arraigned and upon which he plead, and a jury was impaneled and sworn to try the issue, we find it sufficient in form and substance to have warranted a conviction upon the proof introduced on the second trial. The statement in the indictment as to the time at which the offense was committed, is not material. If an indictment for murder show that the murder was committed at some time prior to the time of finding the indictment, it is sufficient. *Sections 128 and 130 Criminal Code.*

Finding that the indictment upon which the defendant was first arraigned, and which the court below dismissed, was sufficient, the question recurs: can the court dismiss such an indictment, after the proceedings under it had progressed as

far as in this case, and the accused held to answer another indictment preferred against him for the same offense? Or, was he not entitled to a trial by the jury impaneled and sworn to try the issue on the former indictment?

The eighth section of the Bill of Rights, contained in our Constitution, guarantees to all persons accused of, and proceeded against, for crime, "a speedy and public trial by an impartial jury of the county or judicial district wherein the crime shall have been committed."

This court, in *Stewart v The State, 13 Ark., 720*, Chief Justice WATKINS delivering the opinion, in referring to the constitutional declaration of rights, announced the sound and wholesome doctrine that "this provision, and all those of a similar character, are declaratory of the sense of the people concerning great fundamental principles, designed as limitations upon the powers of the departments of government, in the *enactment, the interpretation and the execution* of the laws." In that case the defendant sought to be discharged upon the ground of the length of time intervening between his arrest and imprisonment and his application for a discharge, which was refused; but in that case the defendant contributed to the delay—first, by taking a change of venue; second, upon his own motion obtaining a continuance, and third, by moving to quash the venire and set aside the panel of petit jurors, etc.

The learned Judge, in *Stewart v. The State*, further said: " That an accused is entitled to a speedy trial, is a proposition which no one will question; but what is a speedy trial, and what consequence will follow, where a speedy trial is denied, are questions that have to be considered with reference to the existing law, and its practical operation, in the determination of individual rights." This doctrine, applied to the law existing at the time of the arraignment of the defendant in this case, upon the indictment first preferred against him, did not authorize the dismissal   We find no law authorizing the dismissal of a valid indictment at that stage of the proceedings, nor does it appear by the transcript of the record

before us, that any great or pressing necessity existed, to the end that justice might be done, or the law vindicated, by dismissing the indictment and discharging the jury.

It is true that the Code of Criminal Practice, section 178, authorizes the dismissal, by the court, of indictments for any objection to their form or substance, taken on the trial, or for variance between the indictment and the proof, and that such dismissal shall not bar another prosecution for the same offense. But does that statute confer the power upon the court to dismiss a valid indictment, after the cause had progressed as far as this case had, without the consent of the accused, and hold him for trial upon another indictment for the same offense? Bishop, in his treatise on criminal law, volume 1, section 224, says: " The law delights in the life, liberty and happiness of the subject, and deems statutes which deprive him of these, or of his property, however necessary they may be, in a sense odious." It is a familiar principle of the law, that statutes, and the same principle applies to Constitutions, are to be literally interpreted in favor of persons charged with crime. According to this rule of construction, it would seem that the courts are confined in their power to dismiss an indictment, in a case like the one at bar, to formal or substantial defects, or a variance between the indictment and the proof, and that such power does not extend to an indictment good in form and substance, as we have seen the indictment in this case was. Mr. Bishop, (see *Crim. Law, vol. 1, sec. 864*,) in discussing the doctrine of former jeopardy, says: "It must be borne in mind that the constitutional provision under consideration is not the only impediment to the re-hearing of a criminal cause. It is, indeed, the only one not removable by legislation; but when legislation has not interfered, and the question depends on common law principles, there may be various other absolute bars to a further trial."

In the case of *Klock v. The People, Parker's Crim. Rep., 676*, decided by the Supreme Court of New York, the defendant was indicted and put upon trial for the crime of arson. During

the trial, upon the motion of the prosecuting attorney, without the consent and against the objection of the accused, a juror was withdrawn and the jury discharged. At the ensu-.ing term the district attorney again moved the trial of the indictment. The defendant set up, by way of plea, the foregoing facts, and, upon error, the court held that the accused was entitled to be discharged. The court, in that case, said: " The true ground of the objection lies back of the Constitution, and is found in the principles which have been deemed essential to the full and fair protection of individuals accused of crime, and to secure to them a speedy and impartial trial, and the best means of vindicating their innocence. The practice and the views of courts of criminal jurisdiction, upon questions somewhat analogous to that presented in this case, have passed through some modifications. Kent, J., in *People v. Olcott, 2 J. C., 301,* refers in detail to the earlier cases bearing upon the point; and, while his review of the cases shows distinctly the modifications and changes which have taken place in the practice of courts, it also shows the great tenderness and care manifested by the judges for the rights of the accused, and to secure to them every right essential to their defense, and an anxiety to protect them against any act or omission of the government, or the public prosecutor, which could injuriously affect them."

It was held, in *The State v. Walker, 26 Ind., 346,* that when the accused, in a criminal prosecution is put upon trial, on a valid indictment, before a legal jury, and the jury is discharged by the court without good cause, and without the consent of the defendant, he has incurred the first peril, and the discharge of the jury is equivalent to a verdict of not guilty. So, also, in the case of *The People v. Barrett and Ward, 2 Cains' Cases, 100 to 304,* the Supreme Court of New York held that "where the jury were discharged against the consent of the defendants, (in a case of misdemeanor only), because the district attorney was not prepared with evidence to support the prosecution, such a discharge was *equivalent to an acquittal,*

and the defendants could never be brought to trial again for the same offense." See *Commonwealth v. Cook et al., 6 S. and R*, 777, and cases there cited; *John Mounts v. The State of Ohio, 14 Ohio, 295,* and cases there cited.

We do not wish to be understood as intimating that the court could not, in any other cases than those mentioned by statute, discharge the jury and hold the defendant for trial at another time and by another jury. Doubtless the court would have that power when a criminal cause has been submitted to the jury, and they have retired to consider of their verdict, and it is found to be impossible for them to agree, the court could discharge the jury and hold the accused for trial. So, also, if, during the progress of the trial, one of the jury should become so ill as to be unable to sit in the panel, or if the accused should become sick and unable to be present and proceed with the trial.

Bishop lays down the doctrine to be that, " Whenever, after a trial has commenced, whether for misdemeanor or for felony,. the judge discovers any imperfection which will render a verdict against the defendant, either *void* or *voidable* by him, he may stop the trial, and what has been done will be no impediment in the way of any future proceedings. Whenever, also, any thing appears showing plainly that a verdict cannot be reached within the time assigned by law for the holding of the court, he may adjudge this fact to exist; and, on making the adjudication matter of record, stop the trial with the like result as before. But, without the adjudication, the stopping of the trial operates to discharge the prisoner. In other words, when the record shows the defendant to have been in actual jeopardy, he is protected thereby from further peril for the same alleged offense. But when it shows, also, in addition to this, something which disproves the peril, it does not show the peril, whatever else it shows, and therefore it does not protect him." *Vol. 1, 873.*

Entertaining the views above expressed, we think the true rule to be that, whenever the accused has been arraigned, a

jury impaneled and sworn, and the cause given them in charge, as was in this case, and there being no objection interposed by the accused to the indictment or the other proceedings, we will presume that he was demanding his constitutional right to a speedy and public trial, by an impartial jury of his country, etc., and the indictment being sufficient, as we have seen, and there appearing by the record to be no other reason for dismissing the indictment than insufficiency, the court would not deny the defendant the right to a speedy and impartial trial by dismissing the indictment. The dismissal of the indictment in this case, we think, under the circumstances, operated as an acquittal of the defendant. The Jefferson circuit court, therefore, erred in sustaining the demurrer to the defendant's second plea.

There is another error disclosed by the record, which, though not objected to here by the appellant's counsel, we deem it our duty to notice. The two pleas, of former acquittal, and not guilty, were submitted to the jury at the same time. The former should have been first tried, and, if the verdict was against him; the judgment upon it would have been that he answer the indictment. In the case of *Rex v. Roche, 1 Leach, 160,* the court said: "In pleas of abatement there are two issues, and they are always tried upon separate charges to the jury. Besides, charging them with two issues at once would lead to the absurdity that, being charged with both, they would be obliged to find upon both; and yet, if the first finding was for the prisoner, they could not go to the second, because that finding would be a *bar.* They are distinct issues; and the jury must be separately charged with them." *Amer. Crim. Law, vol. 1, sec. 538; Hill v. The State, 2 Yerger, 248; The State v. Copeland, 2 Swan, 262.*

The disposition we have made of the questions above dis cussed, are sufficient to determine this case, and we deem it unnecessary to notice the objections, to the ruling of the court below, in giving and refusing its instructions to the jury.

The judgment of the circuit court is, for the errors aforesaid,

reversed and the cause remanded, with directions to overrule the demurrer to the defendant's second plea, and to proceed in the cause according to law, and not inconsistent with this opinion.

Judges GREGG and McCLURE, dissenting, say :

We are of opinion that the weight of authority, both in England, and most of the American States, is that a citizen cannot be twice put in jeopardy of life or liberty for the same offense, and that, when a competent court is duly organized and a defendant has plead not guilty to a good indictment, and a jury has been empaneled to try the issue, jeopardy has then attached, and that nothing but his own consent, or unavoidable necessity can authorize a dismissal of the prosecution, or a discharge of the jury, and subject the accused to further prosecution for the same offense.

The question in this case is, whether or not the fundamental law of the State, and the acts of the Legislature, can twice jeopardize the life or liberty of the citizen, or can fix the time at which jeopardy begins, and if either or both can be affected by the sovereign power of the State or by legislative action, has such change been made?

We are not prepared to hold that even the entire sovereignty of the State has the power to subject her citizens to various trials for life or liberty, for one alleged offense, but may she not define when jeopardy begins, when a party has actually been put in peril of life or liberty, so as to free him from further answering to such charge?

It will be seen by examining the many authorities referred to by the Chief Justice, that courts have not been uniform in their ruling as to when a defendant is in jeopardy.

We think the weight of the authority is as he stated it, but it is clear that there has heretofore been no definite and fixed rule prescribing the time when jeopardy attaches, and we are not prepared to say that there is any principle of higher law

or natural right that prevents the sovereign people of a State, when in convention, from defining, within the bounds of reason and justice, when, and not till when, a citizen shall be considered in jeopardy. If so, have the people changed or modified the rule in this respect?

The Constitution of 1836, section 11, article II., declared: "That in all criminal prosecutions the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor; and in prosecutions by indictment or presentment, a speedy public trial by an impartial jury of the county or district in which the crime shall have been committed; and shall not be compelled to give evidence against himself." Section 12: "That no person shall for the same offense, be twice put in jeopardy of life or limb."

But in the Constitution of 1868, the clauses in reference to the trial of persons for high crimes are, to some extent, changed. Section 9, Article I., is as follows: "No person shall be held to answer a criminal offense unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases of petit larceny, assault, assault and battery, affray, vagrancy, and such other minor cases as the General Assembly shall make cognizable by justices of the peace, or arising in the army or navy of the United States, or in the militia, when in actual service, in time of war or public danger; *and no person, after having been once acquitted by a jury, for the same affense shall again be put in jeopardy of life or liberty;* but if, in any criminal prosecution, the jury be divided in opinion, the court before which the trial shall be had may, in its discretion, discharge the jury, and commit or bail the accused for trial at the same or at the next term of said court; nor shall any person be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty or property without due process of law. All persons, before conviction, shall be

18

bailable by sufficient sureties, except for capital offenses—murder and treason—when the proof is evident or the presumption great; and the privilege of the writ of *habeas corpus* shall not be suspended unless when in cases of rebellion or invasion the public safety may require."

In the Constitution of 1836, we find the declaration that an accused shall not be twice put in jeopardy of life, etc., leaving it solely to the courts to decide what is being in jeopardy, a term, as we have above stated, not well defined; some courts holding that at a certain stage of the proceedings jeopardy attaches, while others hold that it does not attach until further steps have been taken. The proposition as to whether or not a jury, duly empaneled, can be discharged, if so, when and under what circumstances they may be discharged, without the accused having a right to acquittal, are among the vexed questions that for so many years have perplexed the courts, and we think the language of this ninth section, of article one, of our new Constitution, compared with that of sections 11 and 12, article 2, of the old Constitution, shows that the minds of the people's delegates, in convention, were directed to these difficulties, and that, while they attempted still to secure to an accused all the substantial rights afforded by a free and liberal government, they attempted to so define those important rights that guilty parties might not escape for want of a technical compliance with salutary and substantial provisions.

The old Constitution not only declared that in cases of criminal prosecution, the accused should be informed of the nature and cause of the accusation against him, but *he should have a copy thereof.* It is a fact, well known to those of large experience, that many perplexing questions arose in practice as to the time and manner of furnishing such copy, as to whether that furnished was in all respects a perfect copy or was sufficient. The new Constitution attempts to avoid and does not require the copy, but leaves it to the courts to see that the accused is properly advised as to the charges preferred

against him, or for the Legislature to prescribe in what cases a copy shall be furnished. The new Constitution also omits that clause requiring all witnesses to meet the accused face to face.

But, upon the subject now before the court, the new Constitution does not declare, as did the old, that no one shall be twice put in jeopardy of life, etc., but declares that "no person, after having been once acquitted by a jury, for the same offense, shall be again put in jeopardy of life or liberty." And, as an evidence that the convention was then attempting to define when that jeopardy, which would entitle a party to a verdict or a discharge, should attach, they, in the same section, say that the court in its discretion, may discharge the jury, if they differ in opinion, and the accused shall stand for further trial, etc.

It seems to us that the Constitutional Convention had power to define the time (consistent with right and the principles of republican government) when jeopardy does attach, and that a proper interpretation of the new Constitution is, that it does not attach until a verdict is had in the case.

The legislative department seems to have so interpreted this provision. In section 172, Criminal Code of Practice, it is enacted that : "There are but three kinds of pleas to an indictment: _First_. A plea of guilty; _Second_. Not guilty; _Third_. A former conviction or acquittal of the offense charged, which may be pleaded with or without the plea of not guilty."

"Section 178 : The dismissal of the indictment by the court, on demurrer, except as provided in section 169, or for an objection to its form or substance, taken on the trial, or for variance between the indictment and the proof, shall not bar another prosecution for the same offense."

We have seriously considered whether or not our strong inclination not to allow one, perhaps guilty of a henious crime, to go free, upon a mere error of the inferior court, without any finding or judgment upon the merits, may not have influenced our construction of these legislative acts, yet it does seem to us they were intended to define, and to some extent restrict the

privileges of an accused; that they only prevent him from being discharged upon technical grounds, and that they are not inconsistent with common right and natural justice.

And, while we are conscious of the great importance of guarding individual rights and hedging in courts, wherever, from ignorance or prejudice, they are liable to overstep the bounds of justice, and the extreme delicacy in construing legislative acts in contravention of well established precedents, yet mature consideration impels us to say that, while we do not approve the action of the circuit court in discharging the jury, after the case had so far progressed, yet, under our late Constitution and statutes, there was no sufficient error to let this accused go hence with his crime unanswered, and that the sentence and judgment of the court below ought to be affirmed.